181873 United States v. Charles W. Garske et al. May it please the Court, Cynthia Young for the United States, and I'd like to ask to reserve two minutes for rebuttal. You may. Thank you, Your Honor. The Supreme Court held in United States v. Perez that when a district court declares a mistrial without the defendant's consent, the Double Jeopardy Clause bars, excuse me, permits a retrial if there was a manifest necessity for the mistrial or the ends of justice would otherwise be defeated. The district court here abused its discretion when it barred retrial and dismissed the indictment against the three defendants, Garske, Gotsent, and Gotsent. The Supreme Court's decision-making was based on a novel and self-created standard of manifest necessity that looked to the government's decision-making when the government plays what the Court said was a, quote, prominent role in the mistrial. That is, rather than examining whether there was a manifest necessity for the mistrial itself, as the Supreme Court test requires, the Court focused on what it perceived to be the government's reasons for the mistrial. It seems to me that the Court actually made a double finding here. Judge Stearns originally found there was a manifest necessity for a mistrial and then found that the government, in addition, had to meet this second manifest necessity test and show, in effect, that there was a manifest necessity for its action. Isn't that really what happened here? Yes, I would agree that that is what happened. The original hearing on March 19th, the Court met all of the Simonetti factors. It listened to both the parties or all three of the parties in the government. It asked for alternatives. The only one it could come up with was holding the jury for a period which it felt was impractical. And then it had reflected, and in addition to that, it had the weekend to think about what was going to happen with this. So based on that, the consideration of the three Simonetti factors, we would agree that it did determine there was manifest necessity. And, in fact, at the end of that hearing, after counsel for one of the defendants said, we don't think there is manifest necessity, the Court said, well, that will be an interesting issue for appeal. So it's clear that it knew about the manifest necessity. And the Court was prophetic. It is an interesting issue for appeal, just coming up a little differently. That's true. But that should have been the end of the analysis. Well, what is the manifest necessity? The manifest necessity was this mistrial was caused by the fact that there was a juror whose wife was taken ill with a brain tumor and had to leave the jury. Well, that's the reason for the decline in the jury by one. Right. So the prosecutor had the option of agreeing to complete the trial with three, with the three that are before us. It is true that the government did have that option. But that's Rule 23B2B specifically provides that all three parties must agree, the government, the defendant, and the Court. But Rule 23 doesn't preclude the government from going forward as to the three, does it? No, it doesn't. Right. But So what is the reason for the mistrial as to those three? Isn't it that they wouldn't go along with the four? The government had said that it would consent to going forward if everyone went forward because this was a conspiracy case. So I'm just trying to figure out what the manifest necessity is. One possibility is the manifest necessity is a juror got ill or whatever circumstances, couldn't continue. Another possibility is the actual manifest necessity is the government wanted to proceed with a unsevered trial of all four and couldn't. But if you look, for example, at Singer, in Singer, the Supreme Court was addressing 23A, which is different. There is the constitutional right to a jury trial is the fallback. But in that case, the Supreme Court specifically said that we don't look at why the government refused to consent to the non-jury trial. It said that expressly, that the government's reasons are not the issue. But that's a decision that's made ahead of time. This is after trial is all but complete except for closing arguments. Well, no, there was still Wait a minute. I'm sorry. And the defense has already disclosed this trial strategy, which, as they say, resulted in a completely different-looking trial the second time around with the fourth conspirator. Well, a couple things on that. So I believe that the manifest necessity was the fact that this juror was taken ill and a juror's wife and there was no alternative that the court found viable at that point. That was the manifest necessity. I don't think the government's reasons for withholding did actually explain why it didn't want consent, and that was it believed, having charged a conspiracy, all four defendants should be tried together. The reason it said that was it kept referring to inconsistent verdicts, but it also referred to the fairness of the trial and perception of fairness. And if you look at cases, the Supreme Court case of Zaffiro about inconsistent verdicts and conspiracies How does severance impact the fairness in this instance? Because you're going to end up with it's not actually technically inconsistent verdicts that's the issue. It's inconsistent rulings about evidence, about witness testimony, witnesses testifying differently in two different trials. You may make one finding about conspiracy in the first trial and a totally different one in the second trial. Ms. Young, can I suggest to you that you may be unnecessarily struggling, fighting Judge whether we say that the manifest necessity for the mistrial was the illness of the juror's wife or the government's withholding of consent? Because if it's the latter, that only makes the question is there something about the government's withholding of consent that is sufficiently improper or mistrial? And your answer to that question is going to be no. And you're going to make essentially the same arguments that you've made in your brief anyway. Can I just add one thing to that since we're having a colloquy with you, which you're not fully participating, which is, suppose there, which I think is right, you might conclude that the government in not consenting isn't doing anything improper. It's entitled to seek to have a trial of all four unsevered if it wants. What I'm not clear in the case law is the language manifest necessity suggests to me a substantiality test. In other words, obviously if it's improper or gaming or bad faith, that would be of great concern. But suppose the government's interest is just not substantial enough to, on the other side, make these people go through a whole other trial with all the devil jeopardy concerns that that might raise. So what's your answer to that as to the substantiality of the government's interest? Because one thing about the record that's at least somewhat notable is that, in fact, the government was happy to go through with one and three. So they could have gone through one and three without dismissing the case and retrying them by just having proceeded with those three. So what is the substantial necessity of having done it the way they did? How can you help me with that? Well, let me first say, I would hesitate to say that the government was happy to go forward with one and three. In fact, it definitely wasn't. The whole point was to avoid that end result. The case law doesn't actually have a substantiality test. Does it not have one? No, it doesn't. It follows the Simonetti factors in all of the cases. And then a lot of it is what this court has said in Brown and McIntosh that it doesn't look like it was reasonably necessary. So to the extent that that's a substantiality test, that's it. So how could you answer that? Was this reasonably necessary? And if so, why? What's the government's account of why, given the fact that in the end they did go one and three, it was reasonably necessary for them to have proceeded the way they did in service of going against all four at once when, in fact, push came to shove, they were willing to go one and three? Well, again, I don't like your characterization. How about we had no choice? You could have appealed. Appealed what? The dismissal of the three. Let me put another fact on the table that I think will put Judge Barron's question in a proper factual light. I have the same question Judge Barron did. And when I checked the record, I understand that after Judge Stern's ruling, I was told the government filed a motion before Judge Stern's to stop the speedy trial in the Ackerley case and in effect to delay Ackerley's trial until after the appeal in this case. And Judge Stern's denied that motion, thus leaving the government no choice but to either proceed with Ackerley or suffer a speedy trial dismissal. Exactly. I mean, we appealed the case because we wanted to keep them together and we were hoping to have timings such that we would end up with all four defendants back together. That was the plan with the government. And clearly the court didn't find that untoward because it continued the trial and didn't actually set a trial date, I believe, until November of 2018. So that was long after all of this happened. That's only because of the government's reasons. But I do think the government's reasons were reasonably necessary. This was a four-defendant conspiracy. And there is a fairness issue when you're having trials of one conspiracy with different rulings depending on who is going to trial. And with respect to the question about the unfairness because the government has already seen the defendant's case and the fact that Ackerley's trial was very different, as we pointed out in our brief, one of the things that made it very different was Judge Stern's has a policy now of setting time limits on the government. The time limit for the original four-defendant case was 20 hours. The case is really the same with one defendant or four defendants. And then the judge limited that to 11 hours for the retrial of Ackerley. So the case had to be different. But I would also add that there is a concern about fairness to the government. And the fact is, it is true that the courts are mostly looking at whether the government has seen the defense case. But the defense has now seen the government's case twice. It saw the original case. It knew what the witnesses were going to say and how to attack them. And then it saw the retrial. So now it has a better sense of what the trial will be like on retrial as to the three of them. But at no point did the government seek to have the case split. The entire purpose was to make sure that the case was split and to keep it together because of this concern about different rulings and different witness testimony. But to sell you this point, the way that ruling on the speedy trial clock, just spell out for me a little bit, at that point, if the government decided to challenge Judge Stern's decision to dismiss the case against the three, what would that mean? Which we did. We had already filed a notice of appeal. But play that all the way through and wait to get an answer on that before going with the fourth, rather than doing what the government did, which was not wait through that whole process and instead go ahead with the fourth independently. What would have been the problem for the government with waiting for the fourth? Just lay it out for me. We wouldn't have had a problem with that at all. I mean, the speedy trial clock, as long as there is not a formal interference, the speedy trial clock and interlocutory appeal would hold the speedy trial clock. May I finish? Yes. Or the ends of justice. We would have asked for a continuance based on the ends of justice. So the speedy trial clock should have been able to be held. And then we just would have retried, assuming we win, we would have retried all four defendants together. So if that's a possibility, that's what I guess I'm trying to get at. What is reasonably necessary about not following that course and instead following the course the government followed, which was to not wait, pursue the one prosecution and then the third? No, no, no. That's not what happened. What happened was that Judge Stearns wouldn't hold Ackerley's trial. We sought to hold it off and he denied that. Just hum a few bars to me what that means exactly. In other words, what happened was we asked for excludable delay and not schedule it until the government's appeal was over. And the judge said no. He was not going to hold off on her trial. He wanted her to be tried and then he set the trial date for January. And your option at that point was what? We didn't have an option. Well, you had an option to let him dismiss the case against Ackerley for warrant of prosecution and then appeal that. That's not a very attractive option. When I say we didn't have an option, what I mean is we didn't have any option that was at all attractive. And what do you mean by attractive? That's what I'm trying to get at. What I mean by attractive is one where we could actually prosecute Ackerley. We had to prosecute her then as the court wanted to do it or as Judge Selya said, just say she were not or dismiss the case or do something. Well, then you could have appealed that dismissal. But the chance that we would be able, if we didn't... Thank you. May it please the Court. My name is David Spears with Josiah Perks, who's at counsel table with me. I represent Appelli Michael Sedlak. Also with us in the courtroom are counsel for Appelli Charles Garsk, Justine Harris and Michael Gibaldi. And counsel for Appelli Richard Gutsen, Meredith Fiero. In your normal situation where you have a declaration of a mistrial and a double jeopardy question with a 12-member jury, the manifest necessity inquiry is all about what happened that made this mistrial unavoidable. What is it about that happened in the record that made this imperious and more important than the defendant's valued right? In this instance... Excuse me. The Supreme Court in Perez says that the question is whether there is manifest necessity for the phrase that the Court uses for the act of declaring the mistrial. Yes, Your Honor, but we're looking at a situation where there is a rule created that creates different... that the government says creates a different landscape under Rule 23. And in this case... But I'm not sure how that alters the basic framing of the double jeopardy inquiry, which, after all, comes from the Congress. I mean, the Constitution has interpreted for us by the Supreme Court. Because according to the government's theory, when they refuse to consent for whatever reason, even a bad reason, the district court will have no choice except to declare... But we don't have to buy that. I'm just trying to get the inquiry lined up in my head. If the inquiry that we're required to make is whether there's manifest necessity for the district court's declaration of the mistrial, I think that's what the Supreme Court has told us. I'm not saying that the government's basis for... in response to it can't be the subject of inquiry that factors into that. Because the Court has also said that in addition to the basic manifest injustice inquiry, if that manifest... if that mistrial is brought about by some improper action on the government's part, then we know that there's a different outcome, where the government provokes the mistrial. The mistrial may be manifestly necessary, but double jeopardy still bars because of the government's provocation. The Supreme Court, this Court, has repeatedly said that the Court abhors mechanical rules... Yeah, that's right. ...in reaching a determination about whether there was manifest necessity, and the Court has said repeatedly that when you examine a double jeopardy claim, it is a fact-specific inquiry. I don't disagree with you. I'm just trying to frame it right, because I can't find any basis for framing the question as whether there's manifest necessity for the government's exercise of its... option to consent or not to consent under Rule 23, which is the way that Judge Searns seems to have phrased the inquiry, and I can't find any intellectual support or jurisprudential support. Because the government tied the judge's hands and, as he said, left him no choice but to declare a mistrial. The government exercised the discretion here, not the trial judge. The trial judge had his discretion removed from him, and accordingly it is appropriate to focus on the government's... Let's focus on that for a second. So we're just having back and forth with the government about why it was reasonably necessary for the government to proceed as it did, and what's wrong with that? It's not reasonably necessary. Imagine the following, that we're below 12. The court says, what do you want to do? The government says, we want to go forward. Three defendants say, we want to go forward. The judge says, I'm declaring a mistrial because defendants indicted together should be tried together, and I don't want inconsistent verdicts. That would be, the double jeopardy clause would preclude our retrial because courts have said that is not manifest necessity. What's the case that says that? We cited in our brief, Your Honor, five circuits have held that there is no judicial economy exception to the double jeopardy clause. Severance is routinely granted when it is necessary. None of those cases are Rule 23 cases. Rule 23 specifically gives to the district court, just the same way it gives to the government and the defendant, the right to consent or not to consent. It's not the same, Your Honor. We have a valued right. What the government is arguing here is that when you go below 12, they have co-equal rights with the defendant to decide whether the trial goes forward. And the government is saying, their reason doesn't even matter. Back to your question, Judge. But none of us are saying that the government's reason doesn't matter. We're looking at a record where the district court has made a factual finding, a factual finding, that the government was not operating in bad faith. It has not questioned the government's reason. It just has said that it thinks that there was no manifest necessity for the government's decision. The fact that the government was not operating in bad faith is not the question. We objected. That's Oregon v. Kennedy. That's when the defendant has not objected or has requested the mistrial. We objected to the mistrial. The government's reasons would be insufficient if they were relied on by a district judge in refusing to go forward and refusing to sever a defendant. But the issue here is the 12 juror, right? That's the problem. There is a combination of two things. They didn't just simply say we want to go forward in an unsevered trial. They wanted to go forward in an unsevered trial with 12 jurors. No, they said we will go forward with 11 jurors. If all four are in. But they can't do that. They can't go forward with all four with 11 jurors because one of the four won't consent. Under the rule, that's a showstopper. But it is not a showstopper because the court severed the fourth defendant. But then you can't go forward with four. The government's interest in going forward with four is not paramount to our valued right. The court can grant a severance. And in this case, the government preempted that choice by saying we will not go forward with three no matter what. If the judge. What is the authority when their only option. They had no way of trying all four before 11, right? Yes, they could have tried all four. They have an interest in trying all four. But it does not trump the defendant's valued right to complete the trial. And your best case for that are the non-rule 23 severance cases? No. There are five circuits. When it comes to a choice between declaring a mistrial or severing a defendant, you sever the defendant. Because those interests, the rule 14 interest in avoiding severance are pre-trial interest. And when it comes to the double jeopardy clause, those interests fall aside. The double jeopardy clause is paramount. It is paramount to any interest in judicial efficiency or trying to gather defendants who are indicted together. Inconsistent verdicts are an unavoidable but acceptable feature of our criminal justice system. Those are not rule 23 cases. Those were not rule 23 cases. They were not. But the difference in those cases, what happens, I assume, is the government wants to sever and the government doesn't want to. What happens in those cases? Walk me through one of those circuit cases that you're relying on, the fact scenario. The appeal, there was a double jeopardy appeal. And the government defended that there should, the court properly denied a severance. And therefore there's manifest necessity. And the court said no, double jeopardy is more important than judicial economy or rule 14 severance concepts. Those are very important pre-trial when you get to the double jeopardy clause and the defendant's valued right, you sever if you need to, to make sure that an objecting defendant gets to preserve his valued right. Judge Stearns had said I won't let you go forward even though you want to with 11 because I don't want Ackerley severed. The double jeopardy clause would apply and we would be entitled to a dismissal. It can't be that it's different for the government. It just can't be that it's different if the government says we won't go forward because we don't want a severance. The government should focus on problems with the jury. Excuse me, counsel. You're making this leap that a rule 14 severance and the court's rule 23, power to consent or not to consent are on the same plane. There is a line of cases not cited in your brief where district judges have used their rule 23 consent to declare their withholding of consent, to declare a mistrial even where the defendant wanted to go forward and even where the government would have consented and the courts of appeals that have reviewed those cases have said that's fine. I'm not aware of those cases. The district court is a party to this consent formulation the same way the government and the defendant are. I am not aware of those cases. I know you're not because they're not in your brief. They're not in the government's brief either. The devil jeopardy clause should apply the same way with 12 and below 12. And below 12 the government refused to consent and tied the government to the judge's hands. The judge had no other option but to declare a mistrial. It's a fact specific inquiry. You've got to go to what happened that tied the judge's hands. What happened that tied the judge's hands was the government said we will not consent because we think not severing is more important than the defendant's valued rights. That boat has sailed. The courts have ruled severance is a judge must sever if it needs to be done in order to preserve a defendant's valued rights. There's just no question about that. We had a right to go forward and the government's stated reason was not manifest necessity under the case law. This is a case of first impression. The government had no problem with the panel. We have a valued right to go forward. If the government wants to say we don't consent to go forward, they should have a problem with the panel. They should have a problem with the integrity of the jury or the composition of the jury. It should be something that goes to the interest of justice. It should not be we like our chances better without a severance. We like our chances better without having to try the two different cases separately. Our valued right is the number one concern in this instance. The fact that Justice Story in 1820 used a particular formulation doesn't change the fact that too many times to count the courts in this court have said it is fact specific. What fact specific means is you look at what happened. You look at all of what happened. Here what happened is the government said we won't go forward. The reasons are on the record. Those reasons are such that courts have said those reasons don't constitute manifest necessity if a judge relies on them. There shouldn't be any difference here. In essence what the government is arguing is that there is a different, the double jeopardy clause has a different meaning at 12 and under 12. At 12 the defendant's valued right is paramount. The defendant should control to the greatest extent possible whether or not they get to complete their trial before the impaneled jury. The court has to find extraordinary circumstances and an imperious necessity to take that right away from the defendant. In this case the government is saying under 12 we have co-equal rights with the defendant. Their valued right. We have a right to refuse to consent and that doesn't offend the double jeopardy clause. It does offend the double jeopardy clause. They never have co-equal rights with the defendant's valued right. The government has to articulate a reason. Thank you. Just a couple of points. Your right to tell you there I could not find any judicial economy cases that deal with rule 23 in particular. And most of the judicial economy cases they do make that statement. But they also, many of them, Dixon in the 8th circuit, Chica in the 11th circuit, the court didn't actually do the full analysis. Actually Chica is different because in that case there was an agent who wasn't available to testify and that was not manifest necessity. I would note, and this is not a rule 23 case, so that is prefaced. Somerville is an interesting case from the Supreme Court because the real reason that the court found no double jeopardy was in fact judicial economy. And that's also cited in our brief for why you don't look at when there's nothing unconstitutional about the government's reasons. Because in that case the government returned an indictment that was defective. And the court allowed the mistrial and the Supreme Court said there was no double jeopardy to retrying the case. Specifically because it would have come back anyway, so it was judicial economy that was actually at the heart of that case. What's your answer to the severance cases, the circuit severance cases? Well, the severance cases, the problem is in the context of rule 23 what the court is supposed to do with respect to the manifest necessity is consider alternatives. So severance figures into it when the court is considering alternatives. The court here did not sever. And it did not raise severance, although severance was always an issue in the case. It was an issue at the time, the entire time. And three of the four defendants asked for severance. It came up again in all the e-mail exchanges over that weekend. And the defendants never asked for a severance. If they had asked for a severance, I don't know what would have happened if they had asked for one. I think the point he's suggesting, and I don't know if it has force or not, is that these other circuits suggest that the desire not to sever weighed against the double jeopardy interest of the defendant. So here he's saying, by analogy, push comes to shove, ultimately the government's argument is we desire not to sever. So what's your answer to that? Two things. One is those are not rule 23 cases. I understand, but why does that matter? I'm trying to figure that out. On his side, I can't figure out whether it matters or not, and I'm trying to get help. Why doesn't it matter? It matters because rule 23 sets a standard. It's not the be-all and end-all. It's just the beginning of the inquiry of manifest necessity. But the standard is all three parties have to concur. And the Supreme Court said that we're going to make sure that all three parties have to concur in this kind of situation. Because we think we need to maintain the fact-finding function of the jury. But that's important. Isn't the real reason it matters to use the defendant's language is that it sets another valued right into play? Rule 23 itself recognizes the valued right of the defendant and the government to go to verdict with a jury of 12 in a criminal case and then says, in effect, we'll make an exception to that valued right, but we'll only make an exception if the defendant and the government and the district court, which is the overall monitor of the fairness of the proceedings, all agree that a jury of 11 would be okay in this instance. And that's a calculus which isn't present in the typical severance case. Right. And my second point is not going to be as articulate as that, but something close to that. But I would also note that Judge Salyer made the point, and I think this is in a footnote in our reply brief, about the fact that the standards for Rule 14 severance are different. And so whether there would have been a severance, I don't know. If the defendants at that moment, at the March 19th hearing, had asked for a severance, but they didn't, and the fact that ultimately the case was a de facto severance by virtue of what happened, that's a different issue than whether there was a Rule 14 severance and whether there was actually a legal basis for Rule 14 severance. And just one other point. The only other point I was going to say is that not only did we not argue that Rule 23 was the be-all and end-all of this issue, it's manifest necessity, but I would note again, and we've said it repeatedly in our brief, that the district court was at pains to say repeatedly that the government did nothing improper. There was no bad faith. There was no bad intent. And that distinguishes this from cases such as Oregon v. Kennedy and the entire line that says that when the defendant doesn't object, but I think it does apply in this situation, that the court can look, if there's clearly an unconstitutional intent there, that we're intending to provoke a miscrime, we're intending to subvert the defendant's double jeopardy rights, but you don't have any of that here and you have the district court specifically eschewing any of that. Thank you, Your Honor. Thank you.